UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STACY EARL STITH,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. C11-0359-JLR-MAT
(CR07-337-JLR)

REPORT AND RECOMMENDATION

## INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Stacy Stith is a federal prisoner who is currently confined at the Federal Correctional Institution at Sheridan, Oregon. He has filed a motion under 28 U.S.C. § 2255 seeking to vacate, set aside, or correct the sentence imposed upon him following his 2008 convictions on drug charges. The government has filed an answer to petitioner's motion and petitioner has filed a response to the government's answer. After careful consideration of petitioner's motion, the briefing of the parties, and the balance of the record, this Court concludes that petitioner's § 2255 motion should be denied.

///

## BACKGROUND

On June 5, 2008, petitioner was found guilty, following a jury trial, of two counts of distribution of cocaine base in the form of crack cocaine, one count of possession of cocaine base in the form of crack cocaine with intent to distribute, and one count of possession of cocaine with intent to distribute. (*See* Dkt. No. 10, Ex. N.) The charges upon which petitioner was found guilty arose out of an investigation led by Detective Marcos Ortiz of the Seattle Police Department. (*See id.*, Ex. C at 145-146.) Detective Ortiz was assisted during the investigation by Howard Girtman[1], an individual acting as an informant under contract with the Seattle Police Department in an effort to "work off" a potential drug charge. (*Id.*, Ex. C at 147-148.)

Detective Ortiz selected petitioner as the target of the investigation after being given information about petitioner by Girtman. (*Id.*, Ex. C at 148.) On two occasions during the course of the investigation, petitioner delivered cocaine to Girtman under the direction and supervision of Detective Ortiz. (*Id.*, Ex. C at 146.) These "controlled buys" occurred on June 29, 2007 and July 31, 2007, and on each occasion petitioner sold approximately one ounce of crack cocaine to Girtman. (*See id.*, Ex. C at 146 and Ex. D.) Detective Ortiz observed these transactions and monitored telephone calls between Girtman and petitioner which preceded each transaction. (*Id.*, Ex. C at 153-179, 217-243.) During these calls, Girtman and petitioner discussed such things as the type and quantity of drug to be purchased, the price, and where and when the transaction was to take place. (*See id.* and Exs. E, F, G and H.)

---

1 Girtman was also known by the street names Jersey and Jersey Boy. References to Jersey appear in the parties' briefs and in the trial transcript. The Court, in this document, will simply refer to the informant as "Girtman."

REPORT AND RECOMMENDATION
PAGE -2

01   The final step in the investigation was an order up/take down operation organized by
02 Detective Ortiz, and executed by Ortiz and other members of the Seattle Police Department on
03 August 8, 2007. (*See* Dkt. No. 10, Ex. C at 179-182.) As with the earlier "controlled buys"
04 buys, Girtman, under the direction and supervision of Detective Ortiz, called petitioner and
05 ordered a quantity of cocaine. (*Id*., Ex. C at 182-184, 197-198.) On this occasion, Girtman
06 told petitioner he wanted "six hard and two soft," meaning six ounces of crack cocaine and two
07 ounces of powder cocaine, and told him that he had "6,500 right now." (*Id*., Ex. I.) Petitioner
08 agreed to supply the requested cocaine and a meeting place was established. (*See id*., Exs. I, J
09 and K.)

10   When petitioner arrived at the agreed upon location, he was arrested by Seattle police
11 officers. (*Id*., Ex. C at 201-202.) During a subsequent search of petitioner's vehicle, officers
12 found a plastic bag under the hood of the vehicle containing what was later determined to be
13 308.7 grams of crack cocaine and 82.6 grams of powder cocaine, an amount that was almost
14 twice what Girtman had ordered from petitioner on that occasion. (*Id*., Ex. C at 203, 205, and
15 325-26.) Officers also found a small quantity of crack cocaine, 1.0 gram, in the gas cap of
16 petitioner's vehicle. (*Id*., Ex. C at 283 and 326.)

17   Detective Ortiz testified at petitioner's trial, but Girtman, the informant, did not.
18 Detective Ortiz testified about his interactions with Girtman, how he worked with Girtman to
19 set up each of the transactions involving petitioner, and what he observed during each of the
20 operations. (*See id*., Ex. C at 147-184, 197-202.) The government also introduced through
21 Detective Ortiz tapes of the conversations between Girtman and petitioner that occurred prior to
22 / / /

01 the July 31st controlled buy and the August 8th order up/take down.[2]  (*See* Dkt. No. 10, Ex. C

02 at 147-184, 197-202 and Exs. E, F, G, H, I, J and K.)  In addition to the testimony of Detective

03 Ortiz, the government presented the testimony of other Seattle police officers involved in the

04 investigation and arrest of petitioner on the charges at issue here.  (*Id*., Ex. C at 271-287, 289,

05 297, 313-316.)  And, because petitioner had advised the Court prior to trial that he intended to

06 present an entrapment defense, the government also presented evidence of petitioner's prior

07 arrests and convictions for drug dealing activities in order to establish his predisposition to

08 commit the charged offenses.  (*Id*., Ex. C at 326-368.)

09   Petitioner testified on his own behalf at trial in order to support his entrapment defense.

10 (*Id*., Ex. C at 369-413.)  During his testimony, petitioner admitted to participating in the

11 transactions which gave rise to the present charges and he also admitted to committing many

12 prior drug related offenses. (*See id*.)  He claimed, however, that following his arrest in

13 September 2006 on an unrelated drug charge, he decided to stop selling drugs and to enter drug

14 treatment.  (*Id*. at 373-374.)  Petitioner testified that he did well in drug treatment for several

15 months, but started using again when Girtman initiated contact with him in June 2007 and

16 began providing him free drugs.  (*Id*. at 379-380.)  Petitioner further testified that the drugs

17 involved in the transactions with Girtman which gave rise to the charges in this case actually

18 belonged to Girtman and were given to him by Girtman prior to each of the operations.  (*Id*. at

19 381-388.)  Petitioner explained that he believed that the transactions he was involved in with

20 / / /

---

[2] The conversations that took place between Girtman and petitioner prior to the June 29th controlled buy were monitored by Detective Ortiz but were not recorded.  (*See* Dkt. No. 10, Ex. C at 153.)

REPORT AND RECOMMENDATION
PAGE -4

01 Girtman were, in fact, a part of a scheme to charge an out-of-town buyer more money for drugs
02 that Girtman was selling.  (*See* Dkt. No. 10, Ex. C at 381-388.)

The government, in its rebuttal case, presented the testimony of petitioner's community corrections officer, Greg Young, who testified about petitioner's drug treatment and compliance issues.  (*See id*. at 419-429.)  Specifically, Mr. Young testified that petitioner had been ordered by a Washington Department of Corrections hearing officer, in early October 2006, to get into chemical dependency treatment but petitioner did not actually begin treatment until February 2007.  (*Id*. at 423-425.)  Mr. Young further testified that the progress reports he received from petitioner's drug treatment facility indicated that petitioner was having compliance problems and was never in regular attendance.  (*Id*. at 425-429.)

The jury ultimately rejected petitioner's entrapment defense and convicted him on all charges.  (*Id*., Ex. N.)  Petitioner was subsequently sentenced to a term of 288 months confinement.  (*Id*., Ex. P.)  Petitioner now seeks relief from his sentence by way of the instant § 2255 motion.

## DISCUSSION

Petitioner asserts in his § 2255 motion that he was denied effective assistance by both trial and sentencing/appellate counsel.  (*See* Dkt. No. 7.)  Specifically, petitioner contends that his trial counsel rendered ineffective assistance when he failed to call Girtman as a witness at trial to support petitioner's entrapment defense.  Petitioner further contends that his trial counsel rendered ineffective assistance when he failed to call staff members of the drug treatment center he attended as witnesses, and/or to obtain the actual records of the treatment center, in order to rebut the testimony of petitioner's community corrections officer regarding

petitioner's compliance problems. Finally, petitioner contends that his sentencing and appellate counsel rendered ineffective assistance when she failed to re-litigate the lawfulness of the search of petitioner's vehicle after the Supreme Court issued its decision in *Arizona v. Gant*, 129 S. Ct. 1710 (2009).

## Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Claims of ineffective assistance of counsel are evaluated under the two-prong test set forth in *Strickland*. Under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and, (2) that the deficient performance prejudiced the defense. *Id*.

With respect to the first prong of the *Strickland* test, a petitioner must show that counsel's performance fell below an objective standard of reasonableness. *Id*. at 688. Judicial scrutiny of counsel's performance must be highly deferential. *Id*. at 689. There is a strong presumption that counsel's performance fell within the wide range of reasonably effective assistance. *Id*. In order to prevail on an ineffective assistance of counsel claim, a petitioner must overcome the presumption that counsel's challenged actions might be considered sound trial strategy. *Id*. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

The second prong of the *Strickland* test requires a showing of actual prejudice related to counsel's performance. In order to establish prejudice, a petitioner "must show that there is a

REPORT AND RECOMMENDATION
PAGE -6

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The reviewing Court need not address both components of the inquiry if an insufficient showing is made on one component. *Id*. at 697. Furthermore, if both components are to be considered, there is no prescribed order in which to address them. *Id*.

### 1. *Failure to Call Informant*

Petitioner first claims that his trial counsel rendered ineffective assistance when he failed to call the informant, Howard Girtman, as a witness at trial in order to support his entrapment defense. More specifically, petitioner appears to believe that Girtman should have been called in order to establish that he had violated his informant agreement and therefore was not credible, and that he had induced petitioner into committing the drug offenses with which he was charged.

While petitioner faults his counsel for failing to call Girtman in order to challenge his credibility, the record makes clear that petitioner's counsel explored the issue of Girtman's violations of his informant agreement in some detail during cross-examination of Detective Ortiz, and and that he focused extensively on those violations during closing argument in an effort to highlight Girtman's lack of trustworthiness. Petitioner's counsel also utilized Girtman's absence to argue during closing that the government declined to call Girtman because Girtman's testimony would have undermined the government's case.

As to the issue of inducements, petitioner contends that he would not have committed the charged offenses if Girtman had not engaged in several months of "persuasive pressure"

which included offering petitioner drugs for his personal use and providing petitioner the means to commit the offenses by giving him the drugs the night before each of the transactions orchestrated by Detective Ortiz. However, petitioner fails to establish that Girtman would have admitted to inducing petitioner to commit the offenses or would have supported petitioner's version of events if he had been called to testify. In sum, there is simply no evidence in the record to support petitioner's contention that the failure to call Girtman constituted deficient performance.

Moreover, nothing in the record suggests that petitioner was prejudiced by Girtman's absence. Petitioner believes that Girtman's testimony would have established that he had induced petitioner to commit the charged offenses. However, the defense of entrapment has two elements: (1) the defendant was induced to commit the crime by a government agent, and (2) he was not otherwise predisposed to commit the crime. *United States v. Barry*, 814 F.2d 1400, 1402 (9th Cir. 1987). "If the defendant is found to be predisposed to commit a crime, an entrapment defense is unavailable regardless of the inducement." *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir. 1995). The government presented ample evidence at trial to establish that petitioner was predisposed to commit the charged offenses.

The government offered testimony regarding petitioner's prior drug trafficking activity, including five prior convictions and an unrelated pending charge for dealing crack cocaine. In addition, despite petitioner's efforts to convince the jury that he entered drug treatment in order to turn his life around, he acknowledged during cross-examination that he was required to enter drug treatment or face further incarceration on state charges. The government also presented evidence that petitioner waited over four months after being directed to enter drug treatment

REPORT AND RECOMMENDATION
PAGE -8

before beginning a program, that he attended treatment only intermittently once he finally became enrolled in a program, and that he used drugs regularly while in treatment. While petitioner vigorously contends in his § 2255 motion that he was not predisposed to commit any more drug trafficking crimes at the time of the instant offenses, that contention simply is not credible in light of all of the evidence presented at trial.

Because petitioner has demonstrated neither deficient performance nor prejudice with respect to his counsel's failure to call Girtman as a witness at trial, petitioner's § 2255 motion should be denied with respect to that claim.

### *2.    Failure to Call Drug Treatment Staff*

Petitioner also asserts that his trial counsel rendered ineffective assistance when he failed to call staff from the Western Washington Alcohol and Drug Treatment Center, and obtain their actual records, in order to support petitioner's claim that he was not predisposed to commit the crimes charged and to counter the testimony of petitioner's community corrections officer, Greg Young, that petitioner was having compliance problems in the drug treatment program. Petitioner has offered in support of his § 2255 motion copies of the records that he believes counsel should have obtained and offered at trial. While petitioner believes that those records refute Mr. Young's testimony that petitioner was having compliance problems, and that the records would have bolstered his defense, he is simply incorrect.

Petitioner testified at trial that following an arrest in downtown Seattle in September 2006 for using and selling drugs, his community corrections officer directed him to enter drug treatment and he agreed to do so in order to stay out of jail. (*See* Dkt. No. 10, Ex. C at 373-76 and 390.) Petitioner further testified that he began drug treatment around October or

REPORT AND RECOMMENDATION
PAGE -9

November 2006 and that he went to treatment three times a week for a period of four to five months. (Dkt. No. 10, Ex. C at 391.)

Mr. Young testified that he referred petitioner to treatment in late October 2006 and that it was not until February 26, 2007 that petitioner reported to him that he was actually in treatment at Western Washington Drug and Alcohol. (Dkt. No. 10, Ex. C at 423-425.) Mr. Young further testified that he received various progress reports from the treatment provider which reflected that petitioner was having compliance problems and was never in regular attendance. (*Id*., Ex. C at 425-428.)

The records provided by petitioner with his § 2255 motion reflect that his treatment started on February 12, 2007 and continued through early or mid-June 2007. (Dkt. No. 7 at 35-39.) A part of petitioner's treatment plan was that he was supposed to attend three two hour group sessions per week for the first 12 weeks and weekly groups sessions thereafter. (*Id*. at 38.) During the approximately 18 weeks petitioner was in drug treatment, he attended a total of 24 two-hour group sessions. (*Id*. at 35.) It appears that petitioner would have to have attended at least 42 sessions during that period of time to be in full compliance.

The records petitioner argues should have been presented would not, in fact, have rebutted Mr. Young's testimony that petitioner was not in compliance with his drug treatment program and, thus, counsel's failure to present the records at trial in no way prejudiced petitioner's defense. Moreover, petitioner offers no evidence in these proceedings that the testimony of any of the treatment center staffers would have contradicted their own records or would have, in any other way, been beneficial to petitioner. Accordingly, petitioner's § 2255 motion should be denied with respect to his second ineffective assistance of counsel claim.

### *3.    Arizona v. Gant*

Petitioner asserts in his final ground for relief that counsel who represented him at sentencing and on appeal rendered ineffective assistance when she failed to re-litigate the lawfulness of the post-arrest search of petitioner's vehicle under *Arizona v. Gant*, 129 S. Ct. 1710 (2009), a decision which was issued by the Supreme Court after petitioner was sentenced and while his case was pending on appeal.

In *Gant*, the Supreme Court considered the parameters of a lawful search of a vehicle incident to arrest. The Supreme Court held that police are allowed to search a vehicle incident to a recent occupant's arrest if (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search; *or* (2) it is reasonable to believe the vehicle contains evidence relevant to the offense of arrest. *Id*. at 1723. Petitioner appears to believe that he would have prevailed on his pretrial motion to suppress under the standard announced in *Gant*. Petitioner is incorrect.

The record reflects that petitioner's counsel moved pre-trial to suppress the crack cocaine and powder cocaine recovered from the engine compartment of petitioner's vehicle during a search of the vehicle incident to petitioner's arrest. (*See* Dkt. No. 10, Ex. L.) Petitioner argued in his motion to suppress that the search of his vehicle was not a valid "search incident to arrest" because the search was not limited to the area within petitioner's immediate control and because petitioner was handcuffed and seated in the rear of a patrol car at the time of the search and was therefore not in a position to threaten the safety of officers or to conceal or destroy evidence. (*See Id*.)

The government, in its response to petitioner's motion to suppress, did not argue that the

search of the engine compartment was justified as a "search incident to arrest." (*Id.*, Ex. M at 5.) Instead, the government argued that the search was authorized by the automobile exception to the warrant requirement which allows the police to search a vehicle, without a warrant, if they have probable cause to believe that the vehicle contains contraband or other evidence of a crime. (Dkt. No. 10, Ex. M at 5.) The government maintained that the police had probable cause to believe that the drugs petitioner had agreed to deliver to Girtman, the informant, would be found in the engine compartment of his vehicle based on the fact that petitioner had retrieved drugs from the engine compartment of the vehicle during the two previous deals with Girtman. (*Id.*, Ex. M at 7.) An evidentiary hearing was held on April 14, 2008, and Judge Robart thereafter denied petitioner's motion to suppress. (*See* CR07-337, Dkt. No. 30.)

The government represents to the Court in these proceedings that the denial of the motion to suppress was based on a determination that the automobile exception applied to the search at issue and petitioner offers no evidence to the contrary. (*See* Dkt. No. 10 at 17.) The government also correctly notes that the Supreme Court, in *Gant*, appeared to reaffirm the viability of the automobile exception to the warrant requirement. *Gant*, 129 S. Ct. at 1721 ("If there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross*, 456 U.S. 798, 820-21, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found."). As it does not appear that the ruling in *Gant* undermines in any fashion the decision by Judge Robart on petitioner's motion to suppress, counsel's failure to seek to re-litigate the issue did not constitute deficient performance.

## Certificate of Appealability

A petitioner seeking post-conviction relief under § 2255 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to any of the three ineffective assistance of counsel claims asserted in his § 2255 motion.

## CONCLUSION

For the reasons set forth above, this Court recommends that petitioner's motion for relief under § 2255 be denied and that this action be dismissed with prejudice. This Court further recommends that a certificate of appealability be denied. A proposed order accompanies this Report and Recommendation.

DATED this <u>29th</u> day of November, 2011.

Mary Alice Theiler
United States Magistrate Judge